UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| **ARNETIA JOYCE ROBINSON,** | **CIVIL ACTION NO. 7:15-cv-109-KKC** |
| **Plaintiff,** | |
| **V.** | **MEMORANDUM OPINION & ORDER** |
| **THE FEDERAL HOUSING FINANCE AGENCY,** *et al.***,** | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Federal Housing Finance Agency ("FHFA") and the Department of the Treasury's ("Treasury") motions to dismiss. (DE 22; DE 23.) Plaintiff, Arnetia Robinson, is a private individual who claims her investments in Fannie Mae and Freddie Mac ("Companies") were materially damaged when FHFA and Treasury entered into a 2012 amendment ("Third Amendment") to existing Preferred Stock Purchase Agreements ("PSPAs"). The plaintiff seeks declaratory and injunctive relief that would prevent enforcement of portions of the Third Amendment.

## I. BACKGROUND

The Companies, Fannie Mae and Freddie Mac, are government-sponsored enterprises born from statutory charters issued by Congress. The Companies insure trillions of dollars of mortgages and provide liquidity to the residential mortgage market. The Companies previously operated for profit, their debt and equity securities being privately owned and publicly traded. The shareholders in the companies include many individuals and organizations, including Plaintiff.

During the economic downturn of 2008, the Companies were seen as extreme liabilities as major players in the distressed housing market. In response to this perceived volatility, the United States Congress enacted the Housing and Economic Recovery Act ("HERA") on July 30, 2008. HERA granted FHFA the power to place the Companies in conservatorship or receivership. FHFA as conservator or receiver was empowered to "immediately succeed to—(i) all rights, titles, powers, and privileges of the [Company], and of any stockholder, officer or director of such [Company] with respect to the [Company] and the assets of the [Company]." 12 U.S.C. § 4617 (b)(2)(A)(i). Plaintiff contends that as conservator HERA charges FHFA to rehabilitate the Companies so as to put the Companies back into a solvent condition while preserving their assets. Plaintiff also alleges that only as receiver does HERA give FHFA the authority to liquidate the Companies' assets.

On September 6, 2008—despite public statements made by Treasury and FHFA assuring investors that the companies were in sound financial state—FHFA exercised their rights to conservatorship. Plaintiff claims that at that time, neither Company was experiencing a liquidity crisis, nor did they suffer from a short-term fall in operating revenue. The Companies had access to separate credit facilities at the Federal Reserve and the Treasury. The Companies also held hundreds of billions of dollars in unencumbered assets that could potentially be pledged as collateral.

HERA also granted Treasury temporary authority to invest in the Companies' stock until December of 2009. Soon after the Companies were placed in conservatorship, Treasury exercised that temporary statutory authority by entering into PSPAs with FHFA in its role as conservator of the Companies. Under these PSPAs, Treasury committed to purchase a newly created class of Senior Preferred Stock ("Government Stock"). In return for this commitment, Treasury received one billion dollars of Government Stock in each

Company and warrants to acquire 79.9% of the common stock of the Companies. These stocks entitled the treasury to dividends at an annualized rate of 10% cash or 12% in-kind. The agreement gave FHFA discretion to determine whether to pay cash or in-kind dividends. In-kind were to be paid by increasing the liquidation preference of the outstanding Government Stock. Therefore, Plaintiff claims, there was never any threat that the Companies would become insolvent by virtue of paying cash dividends.

The Government Stocks diluted, but did not wholly eliminate, the economic interests of the private shareholders. Shortly after the imposition of the conservatorship, the Director of the FHFA James Lockhart accordingly assured Congress that the Companies' shareholders are still in place . . . common shareholders have an economic interest in the companies." During the conservatorship, due to allegedly pessimistic assumptions about potential future losses, the Companies significantly wrote down the value of their assets. This forced the Companies to incur non-cash accounting losses in the form of loan loss provisions. In June 2012, these losses forced the Companies to issue $161 billion in Government Stock to make up for the balance-sheet deficits. The Companies also issued an additional $26 billion of Government Stock so that the Companies could pay cash dividends to the Treasury (although the Companies were not required to pay cash, as stated above). Because of these transactions, the dividends owed on the Government Stock were artificially and permanently inflated.

As a result of these transactions, the Treasury amassed a total of $189 billion in Government Stock. Based on the Companies' performances in the second quarter of 2012, there still seemed to be value in private shares. The Companies were paying 10% annualized cash dividends on the Government Stock without drawing additional capital from Treasury. Based on the improving housing market and higher quality of the newer

loans backed by the Companies, Plaintiff contends that the Companies had returned to stable profitability.

Plaintiff also alleges that Treasury and FHFA knew of this apparent return to profitability. The Companies would soon be reversing many of the non-cash accounting losses that were incurred previously and both Treasury and FHFA had specific knowledge of this forthcoming balance sheet improvement.

After the Companies had announced their successful second quarter earnings, the Treasury and FHFA agreed to the PSPA's Third Amendment on August 17, 2012. The Third Amendment replaced the previous dividend formula with a requirement that the Companies pay as dividends the amount by which their net worth for the quarter exceeds a capital buffer of $3 billion. This buffer will gradually decrease over time by $600 million per year, being entirely eliminated in 2018. Put simply, the Third Amendment requires the Companies to pay a quarterly dividend equal to the entire net worth of each Company, minus a small reserve that will eventually shrink to zero (the "Net Worth Sweep").

Finally, Plaintiff alleges that the Companies via FHFA agreed to the Third Amendment at the insistence and under the direction and supervision of the Treasury. Plaintiff believes that the Third Amendment was a Treasury initiative that and reflected the culmination of a long-term plan to seize and nationalize the Companies.

Based on the foregoing facts, Plaintiff makes three claims for relief. First, that FHFA exceeded its conservatorship authority under HERA in violation of the APA. (DE 17 at 62–64.) Second, that Treasury exceeded its temporary statutory authority to purchase the Companies' securities in violation of the APA. (DE 17 at 64–66.) And finally, that Treasury further violated the APA through arbitrary and capricious conduct. (DE 17 at 66–68.)

Consequently, Plaintiff requests (1) a declaration that the Net Worth Sweep violates HERA and that Treasury acted arbitrarily and capriciously; (2) an injunction requiring Treasury to return all payments received through the Net Worth Sweep or recharacterizing these payments as a pay down and redemption of Treasury's liquidation preference and Government Stock; (3) vacatur of the Net Worth Sweep portions of the Third Amendment; (4) an injunction preventing FHFA or Treasury from further enforcing the Net Worth Sweep; and (5) an injunction barring FHFA from acting under the direction of Treasury in its role as conservator of the Companies. Both FHFA and Treasury have independently moved for dismissal of Plaintiff's claims. (DE 22; DE 23.)

## II. ANALYSIS

### A. Standard of Review

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true, but the factual allegations must "raise a right to relief above the speculative level." *Id.* at 555. The complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (internal quotation marks omitted). Failure to include plausible factual allegations for all material elements necessary for recovery warrants dismissal. *Id.*

**B. Court Authority**

*1. Claims against FHFA*

Through HERA, Congress explicitly limited court authority to grant equitable relief upon challenges to FHFA action, 12 U.S.C. § 4617(f) provides that: "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." "Courts interpreting the scope of [§] 4617(f) have relied on decisions addressing the nearly identical jurisdictional bar applicable to the Federal Deposit Insurance Corporation ('FDIC') conservatorships contained in 12 U.S.C. § 1821(j)." *Natural Res. Def. Council, Inc. v. FHFA*, 815 F. Supp. 2d 630, 641 (S.D.N.Y. 2011), *aff'd sub nom. Town of Babylon v. FHFA*, 699 F.3d 221 (2d Cir. 2012). These provisions have been construed to "effect a sweeping ouster of courts' power to grant equitable remedies." *Freeman v. FDIC*, 56 F.3d 1394, 1299 (D.C. Cir. 1995). Because Plaintiff's complaint seeks only equitable remedies, such relief is barred and the claims against FHFA must be dismissed unless Plaintiff has properly alleged that "FHFA act[ed] beyond the scope of its conservator power."[1] *Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 992 (9th Cir. 2013); *see also Leon Cnty., Fla. v. FHFA*, 700 F.3d 1273, 1278 (11th Cir. 2012) (" '[I]f the FHFA were to act beyond statutory or constitutional bounds in a manner that adversely impacted the rights of others, § 4617(f) would not bar judicial oversight or review of its actions.' ") (quoting *In re Freddie Mac Derivative Litig.*, 643 F. Supp. 2d 790, 799 (E.D. Va. 2009)).

---

[1] The Court recognizes that FHFA might also be subject to suit if Treasury exceeded its statutory authority in executing the Third Amendment. *See Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 223 (D.D.C. 2014) ("[I]f FHFA, as a conservator or receiver, signs a contract with another government entity that is acting beyond the scope of its HERA powers, then FHFA is functionally complicit in its counterparty's misconduct, and such unlawful actions may be imputed to FHFA."). However, as discussed below, the Court finds that Treasury did not exceed its authority under HERA.

### 2. Claims against Treasury

The same analysis applies to Plaintiff's claims against the Treasury. Section 4617(f) not only bars equitable relief that would restrain the FHFA directly, but also equitable relief that would "*affect* the exercise of powers or functions of [FHFA] as a conservator." 12 U.S.C. § 4617(f). Plaintiff's prayer for relief seeks a declaration that the Net Worth Sweep was invalid, and various injunctions that would prevent FHFA or Treasury from complying with its terms and, in effect, rescind the that portion of the Third Amendment. If Plaintiff is "allowed to attack the validity of [the Third Amendment] by suing the [Treasury], such actions would certainly restrain or affect [FHFA's] powers." *Dittmer Prop., L.P. v. FDIC*, 708 F.3d 1011, 1017 (8th Cir. 2013). As Judge Lamberth aptly stated:

> A plaintiff is not entitled to use the technical wording of her complaint—i.e., bringing a claim against a counterparty when the contract in question is intertwined with FHFA's responsibilities as a conservator—as an end-run around HERA. Therefore, § 4617(f) applies generally to litigation concerning a contract signed by FHFA pursuant to its powers as a conservator.

*Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 222 (D.D.C. 2014). Thus, Plaintiff's claims against the Treasury must also be dismissed, unless Plaintiff has properly alleged that FHFA or Treasury acted beyond the scope of their powers under HERA.[2]

### B. The Third Amendment and Treasury's Statutory Authority

The sole issue[3] in this case that is unique to the Treasury is whether it exceeded its authority under HERA's temporary authorization for the purchase of the Companies'

---

[2] If FHFA exceeded its statutory authority in entering the Third Amendment, Treasury would not be protected by Section 4617(f). *See supra* n.1.

[3] Plaintiff briefly argues that Treasury violated the APA by ignoring alleged fiduciary duties to minority shareholders. (DE 32 at 68–69.) Despite Plaintiff's citations to case law concerning circumstances where "[t]he law is well established that the Government in its dealing with Indian tribal property acts in a fiduciary capacity," and state fiduciary duty law, there is no basis for applying such duties here. *Cobell v. Norton*, 240

7

securities. 12 U.S.C. § 1719(g). HERA included a sunset provision that foreclosed the Treasury's right to purchase securities in the Companies after December 31, 2009. 12 U.S.C. § 1719(g)(4). However, Treasury retained authority to "exercise any rights received in connection" with earlier securities purchases. 12 U.S.C. § 1719(g)(2)(D). Nonetheless, Plaintiff contends that the Third Amendment constituted a "purchase" of securities in violation of the sunset provision. The Court disagrees.

Plaintiff argues that because Treasury transferred its fixed dividend obligation in exchange for the Companies' equity value was thus a "purchase" prohibited by HERA. (DE 32 at 66.) This construction of the Third Amendment is belied by the reality of the transaction, the net worth sweep represented a new formula of dividend compensation for a $200 billion-plus investment Treasury had already made. This argument, like most of Plaintiff's contentions, was previously addressed by the *Perry Capital* Court, this Court agrees with Judge Lamberth's conclusions:

> Notwithstanding plaintiffs' contentions regarding the "fundamental change doctrine," Treasury's own tax regulations, or otherwise, the present fact pattern strikes the Court as straightforward, at least in the context of the applicability of § 1719(g)'s sunset provision. Without providing an additional funding commitment or receiving new securities from the GSEs as consideration for its Third Amendment to the already existing PSPAs, Treasury cannot be said to have purchased new securities under § 1719(g)(1)(a). Treasury may have amended the compensation structure of its investment in a way that plaintiffs find troubling, but doing so did not violate the purchase authority sunset provision. § 1719(g)(4).

*Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 224 (D.D.C. 2014).

---

F.3d 1081, 1098 (D.C. Cir. 2001) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 194 (1993). Clearly there is no "well established" federal precedent applying such duties in this context. Likewise, there is no evidence of Congressional intent to graft state fiduciary duties onto the Treasury's responsibilities under HERA. *See Hancock v. Train*, 426 U.S. 167, 179 (1976) ("[W]here Congress does not affirmatively declare its instrumentalities or property subject to regulation, the federal function must be left free of regulation."). Finally, Congress explicitly permitted Treasury to consider the "need for preferences or priorities regarding payments to the Government," an interest clearly at odds with traditional notions of dominant shareholder's fiduciary duties to minority shareholders. 12 U.S.C. § 1719(g)(1)(C)(i).

### c. The Third Amendment and FHFA's Statutory Authority

Plaintiff contends that FHFA exceeded its statutory authority by entering into the Third Amendment in five ways. (DE 32 at 30.) First, Plaintiff claims FHFA entered into the Third Amendment "at the direction and under the supervision of treasury," in violation of 12 U.S.C. § 4617(a)(7). Second, Plaintiff alleges that FHFA acted as an "anti-conservator" by using the GSEs as "ATM machines." Third, Plaintiff avers that the Third Amendment forces the GSEs to "operate on the edge of insolvency in perpetuity," in violation of 12 U.S.C. § 4617(b)(2)(D)(i). Fourth, Plaintiff represents that entering into the Third Amendment was contrary to FHFA's responsibility to conserve and preserve the GSE's assets, in violation of 12 U.S.C. § 4617(b)(2)(D)(ii). Finally, Plaintiff contends that FHFA failed to satisfy its duty to rehabilitate the GSE's and return them to private control, in violation of 12 U.S.C. § 4617(a)(2). Thus, Plaintiff claims that any of these bases permit this Court grant the equitable relief she seeks, notwithstanding the bar created by 12 U.S.C. § 4617(f).

This Court will address each of Plaintiff's contentions in turn to determine whether she has adequately alleged that FHFA exceeded its statutory authority by entering into the Third Amendment.

#### 1. *12 U.S.C. § 4617(a)(7)*

HERA provides that: "When acting as conservator or receiver, [FHFA] shall not be subject to the direction or supervision of any other agency." 12 U.S.C. § 4617(a)(7). Plaintiff stakes her claim for violation of this provision on the Administrative Procedure Act's ("APA") right of review for individuals "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Defendants allege that Plaintiff lacks standing to enforce this provision

because she does not fall within the "zone of interests" protected by this provision. (DE 37 at 19–20.)

Standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citing *Barrows v. Jackson*, 346 U.S. 249 (1953)). Defendants' argument concerns the latter, and there is no dispute that Plaintiff satisfies the Article III standing requirements. The prudential standing requirement embodied by the zone of interests doctrine requires that "a plaintiff's grievance [ ] arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal citations omitted). The Supreme Court has stated that "[w]hether a plaintiff's interest is 'arguably . . . protected . . . by the statute' within the meaning of the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . , but by reference to the *particular provision* of law upon which the plaintiff relies." *Id.* at 175–76 (emphasis added). Thus, the question presented is whether shareholders interest in the value of their stock arguably falls within the zone of interests protected by 12 U.S.C. § 4617(a)(7).

Plaintiff contends that she falls within this zone of interests because Section 4617(a)(7) is intended to preserve the integrity of a conservatorship, and because one of the principal purposes of a conservatorship is to protect the interests of an entity's shareholders.[4] Whether or not the latter argument is valid, the fact remains that there is no indication that Section 4617(a)(7) itself seeks to protect the interests of entity's shareholders. Indeed, it appears that the clear purpose of the requirement is to provide a preemption defense *for FHFA* in its role as conservator. This is the only method by which

---

[4] Plaintiff also alleges that FHFA owes fiduciary duties to the GSE shareholders, however, as with Treasury, there is no indication that such fiduciary duties exist. *See supra* n.3.

this provision has previously been given effect. *See e.g.*, *Suero v. Fed. Home Loan Mortg. Corp.*, 2015 WL 4919999, at *9 (D. Mass. Aug. 18, 2015). Indeed, the very fact that FHFA itself has not brought suit to enjoin the Treasury from the alleged coercion it was subjected to suggest that FHFA was an independent, willing participant in its negotiations with the Treasury. FHFA's interest in proceeding independently, if it felt such interest was jeopardized, is precisely the zone of interests congress sought to protect. Accordingly, Plaintiff lacks standing to pursue a claim pursuant to Section 4617(a)(7),

Prudential standing requirements are "judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 751 (1984). They are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). With HERA, Congress enacted a statutory scheme that swept away courts' authority to enjoin FHFA conduct. To find that Section 4617(a)(7) gives Plaintiff standing would be inconsistent with this Courts' limited role in our democratic society. "Congress legislates against the background of [ ] prudential standing doctrine, which applies unless it is expressly negated." *Bennett v. Spear*, 520 U.S. 154, 163 (1997). This Court will not hold that Congress implicitly created an end run around an explicit ouster of court authority by including a provision that provided FHFA an additional defense to interference from other governmental bodies, i.e., states and federal agencies.

### 2. *FHFA did not violate any of its "duties" as conservator*

Plaintiff's next three allegations can be broadly classified as claims that FHFA violated its "duties" as conservator and, thus, exceeded its statutory authority. This includes Plaintiff's claims that FHFA has treated the GSEs as an ATM machines, and that FHFA violated both subsections of Section 4617(b)(2)(D).

11

Initially, the Court will note that Plaintiff's voluminous references to general conservatorship duties are inapplicable to FHFA in its role as conservator. (DE 32 at 40–41.) Plaintiff is correct that when Congress enacts a statute using "a well-established term" the enactment "carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations." *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). However, this generalized canon of statutory interpretation carries little relevance when Congress further defines a term contrary to any pre-existing conceptions. HERA's grant of authority to the FHFA exceeds the normal bounds of a conservatorship and, thus, this Court must look to the statutory text to determine the scope of FHFA's powers and responsibilities.

Plaintiff's references to various policy statements and internal communications regarding FHFA's goals for the GSE's prior to the Third Amendment are likewise unavailing. (DE 32 at 41–42.) The *Perry Capital* Court aptly summarized why such statements are irrelevant for the present analysis:

> The extraordinary breadth of HERA's statutory grant to FHFA as a conservator or receiver for the GSEs, likely due to the bill's enactment during an unprecedented crisis in the housing market . . . coupled with the anti-injunction provision, narrows the Court's jurisdictional analysis to *what* the Third Amendment entails, rather than *why* FHFA executed the Third Amendment.
> . . . .
> For instance, the Court will examine whether the Third Amendment actually resulted in a de facto receivership, [ ] not what FHFA has publicly stated regarding any power it may or may not have, as conservator, to prepare the GSEs for liquidation . . . . FHFA's underlying motives or opinions . . . do not matter for the purposes of § 4617(f). *Cf. Leon Cnty., Fla. v. FHFA*, 816 F.Supp.2d 1205, 1208 (N.D. Fla. 2011) *aff'd*, 700 F.3d 1273 (11th Cir. 2012) ("Congress surely knew, when it enacted § 4617(f), that challenges to agency action sometimes assert an improper motive. But Congress barred judicial review

12

> of the conservator's actions without making an exception for actions said to be taken from an improper motive.").

*Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 226 (D.D.C. 2014) (emphasis in original).

Turning to the statutory text, Section 4617(b)(2)(D) provides that FHFA "*may*, as conservator, take such action as may be (i) necessary to put the regulated entity in a sound and solvent condition; and (ii) appropriate to . . . preserve and conserve the assets and property of the regulated entity." 12 U.S.C. § 4617(b)(2)(D) (emphasis added). Plaintiff contends that the Third Amendment violates these provisions and, further, that they are mandatory duties. (DE 32 at 40.) Whether or not the Third Amendment is consistent with these provisions, Plaintiff's argument fails for two reasons. First, Congress explicitly used the permissive term "may" in implementing this regulation. Second, the structure of Section 4617 further clarifies that these provisions are permissive *powers* of FHFA not *duties* with which they are required to comply.

Plaintiff contends that while permissive language often implies some degree of discretion, thatassumption can be "defeated by . . . obvious inferences from the structure and purpose of the statute." (DE 32 at 42 (citing *United States v. Rogers*, 461 U.S. 677, 706 (1983)).) Plaintiff suggests that a permissive reading of Section 4617(b)(2)(D) is inconsistent with the "limited delegation of authority from Congress" embodied by HERA. Further, Plaintiff attempts to apply some form of *expressio unius est exclusio alterius* to suggest that Congress's delineation of FHFA's powers as conservator in Section 4617(b)(2)(D) represents an exclusive statement of the FHFA's possible authority as conservator. These contentions are meritless

There is no indication from either the structure or purpose of HERA that the use of "may" in Section 4617(b)(2)(D) was not intended to grant discretion. Section 4617(b) is

13

entitled "Powers *and* duties of the Agency as conservator or receiver." The provisions at issue fall under the sub-heading "(D) *Powers* as conservator." Thus, the structure of Section 4617 implies that these are permissive *powers* rather than mandatory *duties* of FHFA. Likewise, the suggestion that Congress envisioned only a limited delegation of authority to FHFA is belied by the powers HERA actually grants FHFA. Courts have variously characterized these types of powers as "exceptionally broad" and "extraordinary." *MBIA Ins. Corp. v. FDIC*, 708 F.3d 234, 236 (D.C. Cir. 2013); *In re Landmark Land Co. of Okla., Inc.*, 973 F.2d 283, 288 (4th Cir. 1992).

Finally, Section 4617(b)(2)(D) obviously does not set out the exclusive powers of FHFA as conservator. For instance, Section 4617(b)(2)(J) provides for "[i]ncidental powers," which FHFA may exercise "as conservator." *See also* 12 U.S.C. § 4617(b)(2)(G) (FHFA "may, as conservator or receiver, transfer or sell any asset or liability of the regulated entity"). Section 4617(b)(2)(D) does not create a mandatory duty, and FHFA's alleged failure to exercise its permissive power under that section does not remove Plaintiff's claims from the ambit of Section 4617(f)'s bar on equitable relief.

### 3.  *12 U.S.C. § 4617(a)(2)*

Finally, Plaintiff contends that FHFA has violated its duty to rehabilitate the GSEs pursuant to 12 U.S.C. § 4617(a)(2). FHFA responds that Section 4617(a)(2) also grants it the authority to "wind down" the GSEs as a conservator. (DE 37 at 22–24.) Whether or not this is the case, a point that Plaintiff hotly contests, FHFA is undoubtedly authorized to wind down the GSEs as a receiver. Plaintiff has offered no argument why FHFA is unable to convert its current conservatorship into a receivership and, in fact, HERA clearly envisions the possibility of just such a conversion. *See* 12 U.S.C. § 4617(a)(4)(D) ("The appointment of [FHFA] as receiver . . . shall immediately terminate any

14

conservatorship[.]"); *see also* 12 U.S.C. § 4617(a)(2) ("[FHFA] may, at the discretion of the Director, be appointed conservator *or* receiver." (emphasis added)). Thus, even if FHFA's actions could be construed as evidencing an intent to "wind down" the GSEs, "[t]here surely can be a fluid progression from conservatorship to receivership without violating HERA, and that progression could very well involve a conservator that acknowledges an ultimate goal of liquidation." *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 246 (D.D.C. 2014).

In short, this Court finds that so long as FHFA "is exercise[ing] judgment under one of its enumerated powers" such as "disposing of assets . . . when acting as its conservator . . . [,] a quintessential statutory power of FHFA" this court may not enjoin that act "merely because someone alleges" that it is "improperly or even unlawfully exercising a function or power that is clearly authorized by statute." *Ward v. Resolution Trust Corp.*, 996 F.2d 99, 103 (5th Cir. 1993); *see also* 12 U.S.C. § 4617(b)(2)(G) ("[FHFA] may, as conservator or receiver, transfer or sell any asset . . . of the regulated entity . . . and may do so without any approval, assignment, or consent with respect to such transfer or sale.").

Accordingly, **IT IS ORDERED** as follows:

1. Defendants' motions to dismiss (DE 22; DE 23) are **GRANTED**; and
2. This matter is **DISMISSED** and **STRICKEN** from the active docket.

Dated September 9, 2016.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY